UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES R. KERNS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Y. CUEVAS, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-06979-PCP<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 24 |

James Kerns, a California prisoner proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Mr. Kerns alleges that defendants Cuevas and Jones failed to adequately separate inmates during medical appointments, and that this negligence caused Mr. Kerns to suffer a beating from another inmate.

Defendants have moved for summary judgment. Dkt. No. 24 ("MSJ"). The Court agrees with defendants that Mr. Kerns did not properly exhaust his administrative remedies. Because Mr. Kerns failed to properly exhaust, defendants are entitled to summary judgment and the Court need not consider defendants' other arguments.

For the reasons stated below, defendants' motion for summary judgment is **GRANTED**.

**I.    Background**

At all relevant times, Mr. Kerns was incarcerated at the Correctional Training Facility ("CTF").

**A.    Underlying Incident**

On November 12, 2020, Mr. Kerns attended a medical appointment. Defendant Jones showed Mr. Kerns into a treatment room and then closed the door. Defendant Jones did not lock the door. MSJ at 4.

Mr. Kerns decided to lie down and close his eyes while he waited for his appointment to begin. While Mr. Kerns was lying down with his eyes closed, non-defendant inmate Lujan attacked him. *See id*. at 4–5. In his deposition, Mr. Kerns surmised that inmate Lujan was in a nearby unlocked treatment room and walked past defendant Jones to enter Mr. Kerns's treatment room and attack him. *See* Dkt. No. 24-5 ("Transcript"), at 65:24–66:6, 67:3–11. Mr. Kerns argues that defendant Jones "should have been paying attention" to inmate security but instead "was talking to the nurses." *Id*. at 67:3–4, 67:24–25.

The parties dispute how long the altercation lasted. *Compare* Dkt. No. 24-1 ("Jones Declaration") ¶ 11 ("The incident lasted no more than twenty to thirty seconds.") *with* Tr. at 43:16–44:3, 49:18–19, 58:19–22 (explaining that inmate Lujan attacked Mr. Kerns for a minute before Mr. Kerns even understood what was occurring and that the fight continued another 30 to 40 seconds after Mr. Kerns managed to get up).

A non-defendant staff member noticed the altercation between Mr. Kerns and inmate Lujan and yelled "stop." Defendant Jones then responded to the treatment room and ordered the combatants to cease fighting. When they did not, defendant Jones pulled inmate Lujan off Mr. Kerns. Defendant Jones instructed inmate Lujan to "prone out on [the] floor," and inmate Lujan complied. *See* Jones Decl. ¶¶ 10–11.

Immediately after the fight, inmate Lujan repeatedly stated that he had attacked Mr. Kerns because he mistakenly believed that Mr. Kerns belonged to a rival gang. *See* MSJ at 5.

### B. California's Framework for Administrative Grievances and Appeals

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to administratively grieve and appeal any "policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a).[1]

---

[1] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. The regulations went through further revisions effective January 4, 2022. The versions of the regulations in effect

2

Under the applicable version of the regulations, there are two levels of review for non-health-care appeals by inmates, referred to as a grievance and an appeal. At the first level, the inmate submits a form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility where he is housed. *See id.* at § 3482(a), (c) (eff. June 1, 2020–Jan. 4, 2022). "In response, a claimant shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim." *Id.* at § 3481(a). At the second level, an inmate dissatisfied with the Institutional Office of Grievances' decision at the first level submits a form CDCR 602-2 to CDCR's Office of Appeals in Sacramento. *Id.* at §§ 3481(a), 3485 (eff. June 1, 2020–Jan. 4, 2022).

"Administrative exhaustion within California requires the completion of the [final] level of administrative review." *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017). To exhaust administrative remedies under the applicable regulations, the inmate must complete the review process by appealing the first level decision to the Office of Appeals, in accordance with 15 Cal. Code Regs. §§ 3485–87. Administrative remedies are not exhausted until the Office of Appeals has completed the review process. *Id*. § 3486(m).

**C.    Mr. Kerns's Grievances**

Mr. Kerns represents that he filed two grievances related to the attack by inmate Lujan. *See* Opp. at 8–9.

The first grievance, CTF-100270, discussed the incident on November 12, 2020. *See* Dkt. No. 24-10 ("MSJ Exhibit E"). The grievance stated that "Officer (c/o) W. Jones allowed another inmate (i/m) to 1. Exit his room, 2. Walk directly in front of, and pass c/o W. Jones, 3. Enter my room, and 4. Physically attack me while I was laying down with my eyes closed." *Id*. at 2–3. Mr. Kerns accused defendant Jones of a "dereliction of duty" and "violation of his code of conduct," which "caus[ed] [Mr. Kerns] physical and other injuries." *Id*. at 3.

The parties dispute when the first grievance was submitted to the CTF Office of Grievances ("Grievance Office"). The first grievance was signed on November 16, 2020, and Mr.

---

between June 1, 2020 and January 4, 2022 control Mr. Kerns's claims and are discussed herein.

Kerns represents that he put the grievance in the locked collection box on that day. *See id*. at 2 & Opp. at 7. Defendants represent that the grievance was not timely submitted because it was not received by the Grievance Officer until March 22, 2021. *See* Dkt. No. 24-8 ("Monroy Declaration") ¶¶ 8, 13. They represent that grievances regularly are gathered from collection boxes so the submission date is on or close to the receipt date. *See id*.

Mr. Kerns's first grievance was rejected by the Grievance Office as untimely. *See* MSJ, Ex. E at 4. Mr. Kerns was informed that "[i]f you are dissatisfied with this response, you may appeal the rejection decision to CDCR's Office of Appeals." *Id*. It is undisputed that Mr. Kerns did not appeal the rejection for untimeliness. *See generally* Opp. (not representing that the rejection ever was appealed); *see also* MSJ at 7 ("Plaintiff did not file an appeal.") & Ex. D (showing no record of an appeal in CDCR's tracking system).

Mr. Kerns's second grievance is unnumbered. Mr. Kerns repeatedly conceded that his second grievance discussed his difficulty in getting paperwork related to the incident from CTF rather than discussing the incident itself or the actions of either defendant. *See* Opp. at 9; *see also* Tr. at 94:25–95:4, 97:24–99:3, 103:7–10 ("Q. Okay. But the second that you said you filed, that relates to your request for documents and information; is that fair? A. And impeding my appeal process, yes."). The second grievance was entered into the record during Mr. Kerns's deposition, and expressly "request[s] all paperwork, incident reports, injury reports, and chronos." *See* Tr. Ex. 4, at 147.[2] It did not complain of defendants' conduct but instead accused "CTF [of] attempting to obstruct and cover up" the incident. *Id*. at 148. Because the second grievance concerned a separate wrong—the alleged withholding of documents—it is not relevant to this action. *See* Cal. Code Regs. tit. 15, § 3482(c) (requiring a prisoner to describe "the claim, including key dates and times, names and titles of all involved staff members" in his grievance).

## II. Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to

---

[2] The exhibit is not Bates-numbered. Because the exhibits to the deposition were voluminous, the Court uses the pagination applied by the Official Court Electronic Document Filing System.

judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

When a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the defendant, however. *Id*. If material facts are disputed, summary judgment should be denied and the "district judge rather than a jury should determine the facts" on the exhaustion question, *id.* at 1166, "in the same manner a judge rather

than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.* at 1170–71.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

### III.   Analysis

Defendants argue that Mr. Kerns's claim fails on the merits because Mr. Kerns failed to exhaust any grievance against either defendant; that in any event neither defendant was subjectively aware of a risk posed to Mr. Kerns by inmate Lujan; and that defendant Cuevas was improperly sued as a supervisor. *See* MSJ. at 9–17.

The Court agrees that Mr. Kerns failed to exhaust in the manner required by California's rules. Because the failure to exhaust is fatal to Mr. Kerns's claim against all defendants, the Court need not consider Defendants' other arguments. *See Albino*, 747 F.3d at 1170 ("Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim.").

#### A.   Law Regarding Exhaustion

Federal law provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v. Blake*, 578 U.S. 632, 638–39 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions). All available remedies must be exhausted and exhaustion is a prerequisite to suit. *See Porter,* 534 U.S. at 524; *see also Booth v. Churner*, 532 U.S. 731, 741 (2001). District courts lack discretion to ignore a failure to exhaust. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

The PLRA's exhaustion requirement cannot be satisfied by filing a "procedurally defective administrative grievance or appeal." *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90–91 (footnote omitted). Accordingly,

Kerns was required to satisfy CDCR's procedural rules in order to exhaust.

### B. Mr. Kerns's Relevant Grievance

Mr. Kerns submitted only one grievance that is relevant to this action: CTF-100270. Defendants argue that this grievance did not exhaust Mr. Kerns's administrative remedies because it was not timely filed. *See* MSJ at 9–13. As noted above, Mr. Kerns disputes this. Because the parties dispute the day on which Mr. Kerns submitted his grievance, the Court cannot grant summary judgment on the basis of the grievance's purported untimeliness.

Even assuming Mr. Kerns timely submitted his grievance, however, Mr. Kerns did not properly exhaust his administrative remedies because he did not appeal its rejection to CDCR's Office of Appeals. *See* MSJ at 7 (noting that Mr. Kerns "could [have] appeal[ed] the rejection to CDCR's Office of Appeals" but "did not file an appeal."). The Ninth Circuit has recognized that where a prisoner fails to appeal the procedural cancellation of a grievance, that prisoner has failed to exhaust. *See Wilson v. Zubiate*, 718 F. App'x 479, 481 (9th Cir. 2017) (affirming district court grant of summary judgment where appeal was cancelled at the third level for lack of jurisdiction and plaintiff failed to appeal cancellation). Here, as in *Wilson*, Mr. Kerns's grievance was rejected for a procedural reason—untimeliness—and he did not appeal that rejection. Because Mr. Kerns did not appeal to the highest level, he failed to exhaust his administrative appeals.

Nor is Mr. Kerns's failure to exhaust excused. Mr. Kerns argues in his opposition that an inmate need not exhaust where administrative remedies are "so confusing that no reasonable prisoner can use them." Opp. at 5. But Mr. Kerns "has not shown that the administrative process was so 'opaque' that it was effectively incapable of use by an ordinary prisoner." *Wilson*, 718 F. App'x. at 482. As in *Wilson*, the effective regulations clearly announced that Mr. Kerns was required to exhaust the rejection of a grievance and instructed him on how to do so. *See* Cal. Code Regs. tit. 15 § 3487(a)(1) (eff. June 1, 2020–Jan. 4, 2022) (listing untimeliness as a reason for rejecting a grievance); *id*. § 3483(i)(6) (listing rejection as one of the possible written responses to a grievance); *id*. § 3483(m)(1) ("A decision found in subsections 3483(i)(1) through 3483(i)(7) does not constitute exhaustion of all administrative remedies available … . Nor does completion of the review process resulting in a decision to reject a claim pursuant to section 3487. *Exhaustion*

*requires a claimant to appeal such decisions as provided in section 3485*.") (emphasis added). Mr. Kerns conceded in his deposition that he "kn[e]w how to use the grievance system" "at the time of the fight," had used the grievance system on at least twenty prior occasions, understood the exhaustion requirement, had exhausted prior grievances, and was "satisfied with the grievance process." *See* Tr. at 92:4–94:8. Finally, the Grievance Office's rejection letter informed Mr. Kerns of the possibility of an appeal:

> This serves as your response by the Office of Grievances. If you are dissatisfied with this response, you may appeal the rejection decision to CDCR's Office of Appeals. Do not resubmit this claim to the Office of Grievances at Correctional Training Facility.

MSJ, Ex. E. Although Mr. Kerns was aware of the appeal requirement from the regulations' plain language and his own experience exhausting prior claims, he failed to appeal the rejection of his grievance as untimely.

Nor has Mr. Kerns shown that prison officials "thwart[ed]" him "from taking advantage of [the administrative review process] through machination, misrepresentation, or intimidation." Opp. at 7 (citation omitted). He argues that the Grievance Office erred in rejecting his grievance as untimely, but that does not establish that he was unable to appeal this error. *See id*. at 8–9. He complained to the warden of CTF that a grievance had been submitted but not addressed, *see id*. at 9–11, but the warden's response reveals both that the Grievance Office had not received any grievance from Mr. Kerns on the date of writing and advised him that he must submit a grievance in order to obtain relief, *see id*. at 26. Mr. Kerns has not introduced any evidence showing that anyone at CTF "thwarted" his ability to appeal the rejection letter and thereby properly exhaust his administrative remedies. Mr. Kerns's choice not to appeal the cancellation of his grievance does not render such an administrative appeal unavailable. *See Cortinas v. Portillo*, No. 15-17174, 2018 WL 5733048, at *1 (9th Cir. Oct. 31, 2018) (finding exhaustion was not excused where "some remedy was available" because the plaintiff "could have appealed his improper cancellation").

The undisputed evidence reveals that Mr. Kerns's grievance was rejected and that Mr. Kerns knew—from his past use of the administrative appeal process and from the regulations—that he needed to appeal that rejection in order to exhaust. There is no dispute that Mr. Kerns

8

failed to appeal. Because defendants presented evidence showing Mr. Kerns failed to exhaust and because Mr. Kerns failed to present evidence of exhaustion or evidence that his failure to exhaust was excused, Mr. Kerns has failed to carry his burden at summary judgment. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (explaining that once the burden shifts to the non-moving party he "must come forth with evidence" supporting his claim); *Celotex Corp.*, 477 U.S. at 323 (if the non-moving party fails to come forth with evidence, "the moving party is entitled to judgment as a matter of law"); *Keenan*, 91 F.3d at 1279 (plaintiff bears the burden of identifying evidence that precludes summary judgment).

Because Mr. Kerns did not exhaust his claim for deliberate indifference, the Court **GRANTS** defendants' Summary Judgment Motion.

**IT IS SO ORDERED.**

Dated: March 12, 2025

P. Casey Pitts
United States District Judge